I'm Alfredo Parrish representing Mr. Minter and Mr. Berlone and Mr. Hill. The young men languishing away in Newton, Iowa are the least of our brethren. They have no guardian angels, few advocates. However, we're not challenging their conviction or their sentences. And this case does not have very many bells and whistles. Contrary to the district court's ruling on the pre-answer motion to dismiss and the state's argument, post-conviction is a judicial and statutory provision, not an administrative process. And the state never argued that there was a single, remaining, unexhausted administrative process. And if they did, it was waived. Your brief itself says a grievance would be a, would, would, it would just be where, you know, would be feuded out, basically. We did say that. And if you notice on the last that's a remedy that you didn't exhaust. Well, we have an alternative. We can come into this court on a 1983 action, but the state does not even bring it up until the last two pages of their brief where they talk about an administrative remedy. But the question is how judge, how the Two reasons he said that the post-conviction was an administrative process. That is not an accurate ruling. He ruled on it pre-answer, and that's a problem. Then he called his plan B, basically, the fallback position on this case was the head case. I understand that exhaustion is not, is not a requirement normally of, of a 1983 action. Correct. It is a requirement of habeas. Well, it is a requirement for habeas. Also, exhaustion is required of 1983 to the, by, if 1997E applies. Exactly. But how you have to look at this case, Judge Loken, is this way. You have to look at Iowa's 822 section through the lens of 1997E. That's the only way you can view this case. You can't view it through the habeas action. Is Martin wrong, or? No, the way you have to review this case, so because we have an alternative here, and we chose to do a 1983 not to talk about exhausting, going through the post-conviction process. Obviously, there may have been an alternative that they could have done that. They don't have to choose. Mentor and Byrd alone don't have to choose that, nor any other sitting there. If they determine that they are not getting their statutory due process, they can bring it through here. But I don't think we have to argue the merits, or the underlying merits, to get to what the judge did in this case. What the district court judge did in this case is the pre-answer motion to dismiss, he cited two grounds. One was the post-conviction statute, which he said, which 822, and again, to go back to your point. I'm not done with Martin. Oh, sure, go ahead. Martin, you have the civil action with respect to prison conditions, and then you have, if it's a civil action with respect to prison conditions other than habeas, then it has to be exhausted under 1997E. And we held in Martin that a challenge to parole procedures. This is a distinction though, Judge Logan. This is a distinction. This is not a challenge to parole procedure. This is not a challenge to conviction. This is not a challenge to the sentence. This is a challenge to whether or not these young men are sitting there during the course of this process not getting good time or getting treatment. That's the key here. The question is whether this 1983 is a civil action with respect to prison conditions. It's not a prison condition. It's treatment. And I think there's a distinction there. But I think you have to go back, Judge, what I think you're doing, and with all due respect, I think you're saying, well, let's go beyond the pre-answer motion to dismiss. I think you're restricted solely to the pre-answer motion to dismiss. I don't think you can argue the broad perspective here and say, okay, let's give the district court judge a break on how he made his ruling or how she made her ruling. You can't do that. I think you're restricted solely to the ruling and how the district judge made it. And he made it on two grounds. And I think that's what this appeal is restricted to. I think you could go down a rabbit hole, clearly, in terms of analyzing it under what you call prison conditions. He didn't even allow us to get to that point. And if you look at the myriad of cases that have come out all over the country, they at least got past their pre-answer to dismiss. You would note in this case, we never got beyond that point. So I think we're restricted to the district court judge's ruling on this point. And if you look at the district court rulings, he said the PCR, the 822, was an administrative process. He also said, well, look, if that doesn't work, let's look at HECT. And HECT, which he said, would deny Minner and Bertolone both their day in court. Address HECT for me. Why is this not an attack that's seeking a shorter period of incarceration? Because that's part of the complaint, right? That there are a number of allegations. But one is, look, if we can get into this, we're willing to get into this program, we want to get into it. And when we complete it, we're going to get a shorter sentence. Right. HECT, for one reason, I would say it goes to, again, conviction and sentencing. And you have to make a distinction here. They mandate the treatment. So, and what we're arguing, correct. But the point that we're making, and I think our complaint, have we been able to play it out? And we don't know. I don't want to argue that because I could get myself in trouble arguing that issue. But I want to go stay pretty well on this issue raised by Judge Kelly and you too. Oh, go ahead. Maybe I'll have three here. Go ahead and answer the about conviction. They talk about sentencing. Second of all, with HECT and the other case you mentioned, Judge Loken, what we're talking about is not good and credit time. We're talking about treatment. But go ahead. Bella Tech's a different thing. It's sitting there talking about, if you prevail on your challenge, you will necessarily undermine the disciplinary conclusion that was reached in the disciplinary process within the prison. And isn't what you're you can reach your question without ever questioning the validity of any sentence that was imposed. It does not undermine the validity or credibility of any decision that's been made. Absolutely. And so what you're saying is that what you're really deprived of is the opportunity to be fully considered for parole because they've set this condition and then they don't allow you to actually participate in the treatment necessary to satisfy it. That's one aspect of it. But also treatment is mandated. If treatment is mandated, they should be getting it. They shouldn't be sitting here. Whether or not it impacts their time or not is irrelevant. They should be getting their treatment. Ultimately, Judge Eggerson, it will impact it. No, there's no doubt about it. How much, I don't know. What does happen? I'm sorry to interrupt, but what happens if the queue is quite long to get into this program? It's enormously long. And it's mandatory before release from custody? It's mandatory before you can even be considered for parole. Now, I know Mr. Hill may differ a little bit on that, but before you can even get into the queue to get out, you have to have this treatment. And has there been any examples of someone who reaches that brick wall is supposed to be released and hasn't been able to because of this? Well, and again, without getting a little bit into the merits, but I think we hint at it, and I could probably cautiously comment on it, and that is there have been people who are up, who then are at their discharge date. They can't get out because they haven't had the treatment. So these young men sit there. And if they continue to sit there, they are deprived of their due process. Now, clearly, we've not had an opportunity to pursue that issue. But people have tried to pursue it through the post-conviction relief area and other relief area. They've gotten nowhere. And the Belk case that is cited is back down in district court now, which I think I can comment on. As that's stated, it sure sounds heck barred. Sounds what? That sure sounds heck barred. There are people who would be discharged, but for what we're making that statement, because you have to start this from the framework of denial and preanswer and recognize the fact there's been no discovery. There's not been a single deposition. There's not been a single interrogatory. There's not been a single request for admission. Additionally, there's not been disclosure under the freedom of information. So we're really starting from scratch. I think you have to start your analysis just where the district court judge left it off. And if you start your analysis there, we win. We go back then, and we start doing the hard work to find out what the state of Iowa is doing to these folks. But it's not heck barred, Your Honor, and that would be my argument. Thank you. Thank you. Mr. Hill. May it please the court, counsel. I'm William Hill from the Iowa Attorney General's Office, and I represent the Iowa prison officials in this matter. The issue presented in this case is basically the timing of placements of offenders in sex offender treatment programs in the Iowa prison system. The offenders request an earlier placement, claiming that that impacts their ability to be paroled. The Iowa prison officials assert that the priority of their placement in the system is based upon their discharge date, and that's certainly a reasonable prison function. The trial court dismissed the allegations. That's a merits argument. In essence. In essence? Yeah. You're saying it's a reasonable, you're saying this challenge to the prison conditions is reasonable, and I mean, that sounds like Turner v. Safely thought. It does in a sense, but I think that just underlies the argument that the rationale of the prison officials that they have for doing what they're doing. It's not the means to an end, it's simply this is what we believe happens. Let's have those facts developed and see if your client survives a Turner review. I don't think we have to, because I think we get out on I would call it the jurisdictional arguments of whether or not they exhausted under Belk. Exhausted what? Their claim that, as discussed in Belk, their claim that somehow there's an interest that needs to be litigated. We're not talking about Belk, we're talking about 1983 and 1997E. Well, what is the administrative remedy to be exhausted? I think they can file a remedy about anything and everything under 1997E that deals with prison conditions. What kind of a remedy? Not a judicial. The question is, can they seek a judicial remedy under 1983 that is free of the exhaustion requirements for habeas relief? I don't think they can. I think it's two arguments in one. I think it's the habeas argument that they have to exhaust. That's the Heck argument. Yes, I call it the Heck or the Belk argument that says, hey, this claim has to go there. That's right. Heck was not a 1997E case. Correct. But this is. Correct. And 1997E is an exception. I hesitate to say either narrow or broad, an exception to the rule that you don't have to exhaust. Right. It's an extra hoop that they have to go through. And the reason that. What is the hoop? The hoop is they have to file a prison grievance that they have to exhaust. And that is they have to file the claim, you know, the informal disclosure in Iowa. We've litigated kind of what it constitutes to exhaust a grievance. And their brief says, with some, I think, logic, that would clearly be, that would be clearly be futile. A grievance to be placed in the SLTP, contrary to the system's staging of this, would be sloughed off as a request for the agency to do its job. It would just be a dead end. Why isn't that right? I think that's the same logic that underlied the U.S. Supreme Court decision in Porter v. Nussel, where they said just the mere fact that, you know, if an inmate asks for a million dollars and the prison doesn't have the authority to give them, doesn't make the remedy unavailable. I know the damages case, but here, how do we know that the grievance process would start with or end with an IDOC official with the authority to order the department to change its SLTP processes? You never know what they will rule. You want the futility, you want it done. No, I don't think it's a futility. I think that somewhat oversimplifies it. I think it's putting the decision... Do we have a little wager about whether the grievance process would produce an order to the department to change its SLTP eligibility rules? No, in a singular case, no. But I think over time, prison officials read these. And I think that just to say there's a grievance process as an unneeded procedural hoop, no. Prison officials see this. They recognize the problem. And that's why the discretion is afforded to them. They get, you know, as a result of this lawsuit that... And we're getting beyond the facts that... They understand the problem that, gosh, we need more treatment people. And certainly that would be the issue if we were to go back and litigate. And there's been some facts about why they moved from Mount Pleasant to Newton and the way the program has since been revamped. I think there is... The grievance, other than resolving any individual problems, raises issues with the prison officials that, hey, these are the problems going on in the system. And systemically, this is what you all need to do. When you're describing a grievance process, you know, an administrative remedy has to be identified. Are you just... You're sort of describing it generally. Have you not taken advantage of? Or is it the same in all of the state of Iowa prisons? It's the same in all the state of Iowa prisons. There's been... I can't remember if it's Overton, the Overton case that describes the process in Iowa, Overton or King, that goes through and says, this is what you must do. It's a two or three step process, informal resolution. These are the things you must do. And that's what you presented to the district court? No, that's what we didn't present. We presented the affirmative that, hey, they didn't exhaust. We raised the affirmative or as much as we know, we said, hey, they didn't exhaust because if they did exhaust, they would have raised this issue. So it's a little bit kind of... We did... It's a motion to dismiss. So we didn't say they present an affidavit saying, hey, they didn't exhaust. We relied upon their fact that they didn't say that. Did you present to the district court what the procedures were that they should have taken advantage of? Not in a pre-answer motion to dismiss. I just argued, I believe that, hey, they didn't exhaust. If they would have exhausted, they would have pled exhaustion. They're not required to plead exhaustion, correct? No, you're correct. That certainly, I mean, on the pre-printed forms, there's always... I realized this was private counsel, but there's kind of a little section that says, hey, did you exhaust, I believe, to whom? And that always gives the court a little bit better understanding as to kind of where the court, where the case is headed. So we assert that, yeah, it is however you consider it as a HEC case, a 1997 E case, or as a habeas case, it's really the same. It's the same. And it's the same whether or not this is a case against the Board of Parole. If it's a denial of parole, they can pursue Iowa administrative remedies. If it's a case against the parole proceedings, they can proceed via grievance as in Martin. The pivotal question is, there's exhaustion. And it doesn't matter how you cut that line, exhaustion is going to be required for the offenders no matter what. And that's the failure in this case that the plaintiffs had. Can you sum up for me why you think it's HEC barred? What is it about the nature of this complaint that makes it HEC barred? Well, I think it's HEC barred because Iowa has said, the Iowa Supreme Court has said that it's opposite, that there shouldn't be a post-conviction relief claim. But the court disagreed and said, yeah, they have to exhaust. Now, I think the court was, and maybe this case is somewhat premature, is we don't know what kind of how belt two is going to progress and say, hey, we've looked at it. We've decided that this isn't a claim that's procedurally barred or HEC barred or habeas barred at all. This is just an issue that the court has to, the inmate can kind of go on his own. If you cut through all the fog in HEC, isn't HEC always just about, if we afford you the relief, we're undermining an adjudication or a determination of guilt? And what exactly is the determination that's being undermined by allowing this to go forward? I mean, maybe I'm just not smart enough on HEC to figure it out. But as to either the conviction or the sentence, what's your theory on why what Judge Erickson has just summed up applies to this particular complaint? Two questions. In direct answer to you, I think that's what Justice Waterman was stating in his dissent in Belk with regards to the structural injunction that is kind of forming the, trying to have the court sit as a super committee in terms of the answer to your question is, is it undermining the sentence? Yes, because it's really, it goes back to the liberty interest and the parole and whether or not there's a right. If they don't successfully complete, it wouldn't be reduced. So it's the, isn't it sort of the, how tenuous is the connection between the relief that they're seeking and their, the shortening of their sentence? Correct. And I, can I finish answering your question? I understand that they, they get earned time if they complete the sentence. So we're not kind of in the earned time realm of the Jones County case that I cited to the case. They're going to, if they, their, their issue is about the timing. And I think that timing does, could impact their, their sentence. And I think that's why the Supreme Court in Belk kind of routed it back to hey, let's take a look at this. But that, but that's not Hick. I mean, if, suppose they had, I haven't studied, studied the complaint. Suppose there's no mention of earned time credits and no damages claim, just seeking declaratory and injunctive relief to modify the SOTP program. So it doesn't have this, this, so the absence of treatment doesn't have the impact, realer potential on parole eligibility. How in the world can that be Hick Bart? Well, because I think it's the exact, I think you got to go right back to Belk. And that's why the, the Iowa Supreme Court ruled that you have to exhaust that issue because that, that they say presumably could impact your liberty interest. But, but see that you're, you're in the state world. In the federal world, in the 1983 world, you've got your choice. You can bring a 1983 in federal court, or you can bring whatever there is under state law in state court and combine it with a, a 1983 claim. None of that requires exhaustion. I understand. The federal option does not require exhaustion of the state option. Right. I think the, the easy answer is we're right at the intersection of habeas in 83 as they, they talked about. But the, but the intersection that so bothered the Supreme Court is the habeas requirement of exhaustion. Right. And to have the habeas requirement of exhaustion, you have to have a potential invalidity of a conviction or sentence. Right. And if they're just seeking injunctive relief to reform the SOTP program, to eliminate various bad impacts, one of which might be parole eligibility. I don't see habeas, I don't see habeas exhaustion getting in the way of that at all. I understand your point. We agreed to disagree because I think that's why the Supreme Court of Iowa sent it back is to say district court determined that. And I think that's what we're we'll, we'll see what belt two comes up with. But they didn't send, they sent it back to say there was a statutory process available, not that you needed to go back into the prison and file your prison grievance and work your way through the prison grievance, then appeal through the statutory process. Didn't they send it back and say, tell us how the statutory process plays out. Right. Because they said you could otherwise be held in restraint is under the 822.1E is how they're, they're hooking on to. So they think that there's a potential argument that you could be held in restraint. So we would ask that the decision of the district court dismissing the case be affirmed. Thank you. Mr. Parrish, I think we've, I think we've got both sides of this interesting debate. I was going to say you did a much better job of a rebuttal than I could have done. I wasn't making a rebuttal, I was provoking debate. We'll take the case that our advisement has been very well briefed and argued.